UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHAMOON RAFIQ, | ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 25-CV-11090-AK |
| FRED BOWERS, | ) ) ) | |
| Respondent. | ) ) | |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS
AND PETITION FOR WRIT OF HABEAS CORPUS**

**KELLEY, D.J.**

Petitioner Shamoon Rafiq, proceeding pro se, filed this habeas petition pursuant to 28 U.S.C. § 2241 challenging a Federal Bureau of Prisons ("BOP") Disciplinary Hearing Officer's ("DHO") determination that he violated a BOP policy while he was a pretrial detainee, which resulted in, inter alia, the loss of 41 days of good time credits ("GTC"). [Dkt. 1]. Respondent Fred Bowers brings a Motion to Dismiss for failure to state a claim. [Dkt. 14]. As courts review habeas petitions summarily pursuant to 28 U.S.C. § 2243, the Court resolves both Respondent's Motion to Dismiss and Petitioner's Petition in this Order. For the following reasons, Respondent's Motion to Dismiss is **DENIED**, and Petitioner's Petition for Writ of Habeas Corpus is **GRANTED IN PART** on Claims 1 and 2 and **DENIED IN PART** on Claim 3.

**I.    BACKGROUND**

The following facts are drawn from the Petition unless stated otherwise.  Because Petitioner is proceeding pro se, the Court construes his filings liberally and holds them to less

stringent standards than formal pleadings drafted by attorneys. See Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008).

Petitioner is a federal inmate at the Federal Medical Center, Devens. [Dkt. 1 ¶ 2]. On April 10, 2024, while he was a pretrial detainee in Brooklyn, New York, prison staff conducted a search of his cell, which he shared with another detainee. [Dkt. 1-2 at 8]. The staff discovered a cellphone his cellmate had hidden on "the floor under the cell bed area." [Id.]. His cellmate had "t[aken] steps to ensure that [Petitioner] would not learn of [his] possession of the cell phone" and "kept [the phone] hidden whenever [Petitioner] was inside of the cell." [Dkt. 1-2 at 2]. Later that day, Petitioner received an incident report, which is a form used to notify detainees of alleged violations of BOP rules. [See Dkt. 1-2 at 7]. The form contains form fields for staff to record relevant information, including the factual basis, date, and location of the alleged violations. [See id. at 7-9]. Petitioner alleges that the copy of the incident report that he received was blank. [Dkt. 1 ¶ 13; Dkt. 17-1].

Approximately two weeks later, on April 23, 2024, Petitioner appeared before a Disciplinary Hearing Officer ("DHO") for a hearing on the incident. [Dkt. 1-2 at 7]. Petitioner's cellmate also had a separate disciplinary hearing with the same DHO five minutes before Petitioner's hearing, during which his cellmate admitted that the cellphone belonged to him. [Dkt. 1-2 at 3-6]. His cellmate also admitted to possessing a phone charger matching the cell phone that had been discovered inside of the cellmate's assigned locker. [Dkt. 1-2 at 5]. Petitioner alleges that he requested to call his cellmate as a witness at Petitioner's own hearing to testify as to these facts, but he was denied the opportunity to do so. [Dkt. 1 ¶ 13]. The DHO recorded that Petitioner waived his right to call a witness at the hearing. [Dkt. 1-2 at 8-9]. The DHO ultimately found that Petitioner, by having a cellphone in his shared cell, violated a BOP

policy prohibiting the possession of "hazardous tools" (which includes cellphones), as well as the Inmate Admission and Orientation Handbook, which makes inmates responsible for "keep[ing] their area free of contraband." [Dkt. 1-2 at 8-9]. The DHO interpreted "possess" to mean "to have on one's person/under one's dominion or control." [Dkt. 1-2 at 9]. Petitioner was sanctioned with the loss of 41 days of GTC, 30 days in disciplinary segregation, and 365 days loss of visitation. [Dkt. 1 ¶ 6].

On May 7, 2024, Petitioner appealed the DHO's decision to the BOP Regional Director. [Dkt. 1 ¶ 7]. Shortly after, on May 17, 2024, Petitioner was sentenced by the U.S. District Court for the Southern District of New York to a 57-month term of imprisonment followed by a one-year term of supervised release for Conspiring to Commit Securities Fraud and Wire Fraud in violation of 18 U.S.C. § 371. [Id. ¶ 4]; see also United States v. Rafiq, No. 25-CR-00098, Dkt. 23 (S.D.N.Y. Feb. 22, 2024). On July 10, 2024, the Regional Director denied his appeal, explaining that "DHO reasonably concluded [Petitioner] committed the prohibited act based on section 11 of the Incident Report and supporting evidence." [Dkt. 1-2 at 11]. Petitioner then appealed to the BOP Office of General Counsel on March 21, 2025 [Dkt. 1-2 at 12], which was initially denied on March 31, 2025, for untimeliness with opportunity to refile if his untimeliness was explained [Dkt. 1-2 at 13]. Petitioner filed the instant habeas petition on April 21, 2025. [Dkt. 1]. Petitioner then refiled his appeal to the BOP Office of General Counsel some time after July 24, 2025, explaining he did not receive notice of his prior denial, due to transferring facilities, until March 17, 2025, upon which he immediately filed his appeal. [Dkt. 17-2 at 1]. The Office of General Counsel denied his appeal on September 30, 2025, finding that Petitioner was provided notice, that he waived his right to call witnesses, and that the DHO's decision was based on adequate evidence. [Dkt. 18-1 at 2-3].

3

In his habeas petition, Petitioner asserts that: (1) he did not receive adequate advance written notice of the charges because the incident report was blank; (2) he was unlawfully denied the opportunity to call his cellmate as a witness during his disciplinary hearing; and (3) the loss of GTC was unlawful because the sanction was imposed while he was still a pretrial detainee, before he was eligible to receive such credits. [Dkt. 1 ¶ 13].  Petitioner seeks reinstatement of the GTC and a declaration that the charges were unlawful. [Id. ¶ 15].  Respondent has moved to dismiss the Petition for failure to state a claim. [Dkt. 14].

## II.     LEGAL STANDARD

### A.  Habeas Petitions Under § 2241

Federal courts' habeas jurisdiction arises under three related statutes: 28 U.S.C. §§ 2241, 2254, and 2255.  Each serves a distinct purpose.  Section 2241 authorizes federal courts to grant habeas relief to prisoners who challenge "the execution, rather than the validity" of a federal sentence. United States v. Barrett, 178 F.3d 34, 50 n.10 (1st Cir. 1999).  This includes challenges to disciplinary sanctions that result in loss of GTC. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  Section 2254 permits federal courts to hear federal constitutional challenges raised by inmates originally sentenced by a state court. See 28 U.S.C. § 2254(a).  Section 2255 provides the means by which federal prisoners may challenge the validity of their underlying federal convictions or sentences. See 28 U.S.C. § 2255(a).

Habeas petitions are civil in nature and thus are generally governed by the Federal Rules of Civil Procedure ("FRCP" or "Fed. R. Civ. P"). See Teti v. Bender, 507 F.3d 50, 60 (1st Cir. 2007).  In addition, petitions under §§ 2254 and 2255 are subject to their own discrete set of procedural rules that take precedence over the FRCP: the Rules Governing Section 2254 Cases in the United States District Court ("Section 2254 Rules") and the Rules Governing Section 2255

4

Proceedings for the United States District Courts ("Section 2255 Rules").[1] Section 2241 petitions are not subject to their own special set of rules, but a court may, in its discretion, apply the Section 2254 and Section 2255 Rules to them. See Rule 1(b), Section 2254 Rules. Where "not inconsistent with any statutory provision or [the Section 2254] rules," a court may apply the FRCP. See Rule 12, Section 2254 Rules. Thus, on a motion to dismiss in response to a § 2241 habeas petition, the court applies the standard analysis under Fed. R. Civ. P. 12 regardless of whether the Section 2254 or Section 2255 Rules are applied. See Delgado v. Dennehy, 503 F. Supp. 2d 411, 413 (D. Mass. 2007) ("Motions to dismiss habeas petitions pursuant to Fed. R. Civ. P. 12(b)(6) are not inconsistent with habeas rules.").

On the petition itself, courts must "summarily hear and determine the facts," 28 U.S.C. § 2243, with the burden of proof on the petitioner to show "deprivation of rights leading to unlawful detention." Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009). As to remedy, the court is authorized to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. In other words, courts have broad equitable jurisdiction to fashion relief for a habeas petition and may proceed directly to grant such relief after summary review of the pleadings. See Hilton v. Braunskill, 481 U.S. 770, 775 (1987).

**B. 12(b)(6) Motion to Dismiss**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step,

---

[1] These Rules were proposed by the Supreme Court to Congress pursuant to the Rules Enabling Act in 1976 and became effective the following year. See 28 U.S.C. § 2072 et seq.
5

context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id.  Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

### III. DISCUSSION

Petitioner asserts that his procedural due process rights were violated because he was not given adequate advance notice of the charges and he was deprived of his right to call witnesses at his hearing.  Moreover, Petitioner claims the revocation of GTC was unlawful because pretrial detainees are not entitled to GTC.  Respondent moves the Court to dismiss Petitioner's procedural due process claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  He does not expressly address Petitioner's pretrial GTC claim.  In the alternative, Respondent urges the Court to dismiss the Petition for failure to exhaust administrative remedies.  The Court addresses each argument in turn.

#### A. Procedural Due Process

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court held that the loss of GTC affects the length of time a prisoner spends in custody and therefore implicates a protected

liberty interest under the Due Process Clause. Id. at 557. Accordingly, prisoners subject to loss of GTC are entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure [sic] that the . . . right is not arbitrarily abrogated." Id. The extent of that right, however, is limited. Because "[p]rison disciplinary proceedings are not part of a criminal prosecution . . . the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Instead, inmates are entitled to only certain minimum procedures. See id. These include: (1) advance (no less than 24 hours) written notice of the claimed violation, (2) a qualified right to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. Id. at 563-67; see also McGuinness v. Dubois, 75 F.3d 794, 797-98 (1st Cir. 1996) (explaining Wolff factors).

In addition to these procedural protections, due process requires that the DHO's factual findings be supported by at least "some evidence" in the record. Superintendent v. Hill, 472 U.S. 445, 454 (1985). To satisfy this inquiry, the record must not be "so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" Rivera v. Warden, Fed. Corr. Inst. Berlin, No. 20-CV-918, 2021 WL 1894499, at *2 (D.N.H. Apr. 22, 2021) (quoting Ned v. Tatum, No. 15-cv-178, 2017 WL 3822736, at *6 (D.N.H. May 16, 2017), report and recommendation adopted, 2017 WL 3772656 (D.N.H. Aug. 29, 2017)), report and recommendation approved sub nom. Dominiguez-Rivera v. Ryall, No. 20-CV-918, 2021 WL 1890621 (D.N.H. May 11, 2021). The court may not independently assess the credibility of the witnesses or weigh the evidence. Hill, 472 U.S. at 455.

7

### 1. Advance Written Notice

Respondent argues that Petitioner fails to plead sufficient facts alleging that he was deprived of advance written notice, highlighting that Petitioner received an incident report on April 10, 2024—thirteen days prior to the disciplinary hearing. [Dkt. 15 at 5-6].  Petitioner asserts that the incident report he received was blank. [Dkt. 1 ¶ 13].  As Respondent provides no evidence that the copy Petitioner received was filled out—and, indeed, has not expressly contested this fact in his Motion—the Court finds that Petitioner has carried his burden as to this claim.

As an initial matter, Petitioner attached a copy of the allegedly blank incident report in his Reply to Respondent's Motion to Dismiss. [See Dkt. 17-1].  Ordinarily, under Fed. R. Civ. P. 12(d), when a party presents matters outside the pleadings on a motion to dismiss under Rule 12(b)(6), the court must treat the motion as one for summary judgment and thus give the opposing party "a reasonable opportunity to present all the material that is pertinent to the motion."  This is to avoid a situation where "a court reviews statements extraneous to a complaint" resulting in "lack of notice to the plaintiff." Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).  There are three "narrow exceptions": (1) "documents the authenticity of which are not disputed by the parties," (2) "documents central to plaintiffs' claim," and (3) "documents sufficiently referred to in the complaint." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 74 (1st Cir. 2014).

Here, because the blank incident report is the key document supporting Petitioner's claim that he did not receive adequate notice, the filing falls under the second exception as a document that is "central to [Petitioner's] claim."  Additionally, Petitioner described the blank report in detail in his initial Petition, stating that "[p]rison officials did not give the Petitioner advance

notice of the charges that consist of Part I (detailing the facts of the incident and evidence that the incident was delivered in 24 hours); Part II (the Disciplinary Hearing Committee's findings/recommendations to the Disciplinary Hearing Officer); and Part III (the investigating officer's investigation report) of the incident report." [Dkt. 1 ¶ 13]. Thus, the report also qualifies under the third exception for "documents sufficiently referred to in the complaint." Moreover, where, as here, the plaintiff—not the defendant—introduces the documents in a reply to bolster his arguments against a motion to dismiss, the concerns underlying Rule 12(d) are less applicable, as the Rule seeks to prevent claims from being dismissed based on documents that a plaintiff has not had an opportunity to respond to. See Watterson, 987 F.2d at 4. Accordingly, the Court considers the blank incident report as part of Petitioner's pleadings and declines to convert the 12(b)(6) Motion to one under Rule 56.

      Returning to the merits, Petitioner alleges that the copy of the incident report that he received was blank, meaning that he was not informed of basic information such as the description, date/time, and location of the alleged violation. [Dkt. 1 ¶ 13]. Respondent contends that Petitioner was given a copy of the incident report, but does not expressly argue that the copy he received was filled out. And while the DHO allegedly based his findings on section 11 of the incident report [Dkt. 1-2 at 11], Petitioner contends that the copy of the incident report he received is blank, including section 11 [Dkt. 17-1 at 1]. Advance written notice serves to inform the inmate of the charges and enable him to adequately prepare a defense. A blank incident report would not provide meaningful notice of the charges. Absent evidence or argument to the contrary, the Court finds that Petitioner has carried his burden of demonstrating his due process rights were violated as to this claim.

9

### 2. Right to Call Witnesses

Petitioner also argues that his procedural due process rights were violated because he was denied the opportunity to call his cellmate as a witness for his disciplinary hearing. Respondent argues that he waived the right at the hearing and, even if he had not, any error was harmless. The Court finds that Petitioner has met his burden of proving that his procedural right to call witnesses was unlawfully denied, and that such error was not harmless.

Wolff recognizes a qualified right to "call witnesses and present documentary evidence" at prison disciplinary hearings when doing so "will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566. A disciplinary hearing officer may deny a request for witnesses if they reasonably determine that testimony from such witnesses would be irrelevant or unnecessary. See Ponte v. Real, 471 U.S. 491, 496 (1985) (citing Wolff, 418 U.S. at 566). If it is determined that witnesses may be properly excluded, then the hearing officer must "explain, in a limited manner, the reason why witnesses were not allowed to testify." Id. at 497. While not formally adopted by the First Circuit, other circuits have applied harmless error review when reviewing the denial of witness testimony at disciplinary hearings. See Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006); Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991); Deen-Mitchell v. Bledsoe, 548 F. App'x 747, 749 n.3 (3d Cir. 2013). Proffered witness testimony is not harmless where it would have served as a basis to find the petitioner not guilty of the alleged conduct. See Ragsdale v. Confer, No. 21-CV-6188, 2024 WL 1051883, at *9 (W.D.N.Y. Mar. 11, 2024) (finding no harmless error where petitioner sought to call witnesses to testify that he did not start a fight and was instead acting in self-defense).

The Court is persuaded that Petitioner did not waive his right to call a witness under Wolff. Although the DHO report states that Petitioner waived his right to present witnesses

10

[Dkt. 1-2 at 8], that report is the only evidence in the record supporting such a waiver. Respondent has not provided a hearing transcript, contemporaneous audio recording, signed waiver form, or any other documentation confirming that Petitioner relinquished that right. Based on evidence presented by Petitioner, including a statement from his cellmate containing proffered testimony [Dkt. 1-2 at 2] and his account of his request for a witness at the disciplinary hearing [Dkt. 1 ¶ 13; Dkt. 1-2 at 12], the Court concludes that, on balance, there is credible evidence that Petitioner did seek to call a witness and did not waive his right.

Nor was the denial of witness testimony harmless. Respondent's argument relies on a constructive possession theory, based on the BOP policy's prohibition of the "possession" of hazardous tools. [Dkt. 1-2 at 8-9]. However, as the DHO report itself recognizes, constructive possession requires a showing of dominion or control over the item. [Dkt. 1-2 at 9]. Here, Petitioner contends that his cellmate would have testified that the cellmate not only owned the phone but also took affirmative steps to conceal it from Petitioner. [Dkt. 1-2 at 2]. This would likely undermine the inference that Petitioner exercised dominion or control over the phone and ultimately could have persuaded the DHO to reach a different conclusion. While Respondent highlights that the Inmate Handbook places responsibility on all inmates to ensure "their area" is free of contraband [Dkt. 15 at 7-8], the Handbook is not a BOP regulation and is instructive only; the Handbook cannot require the DHO to expand the definition of constructive possession to essentially impose strict liability. In sum, the Court cannot say the denial of Petitioner's requested witness had no effect on the outcome, and accordingly, the error was not harmless.

### 3. "Some Evidence" Under Hill

Respondent asserts that the DHO's finding that Petitioner possessed the phone is legally sufficient under Hill. [Dkt. 15 at 8]. The Court disagrees.

11

Although Hill establishes a deferential standard, it nonetheless requires that a disciplinary determination be supported by at least "some evidence in the record," even if "meager." 472 U.S. at 454, 456.  This is not a rubber stamp; the conclusion reached must be logically supported by something in the record rather than pure conjecture. See Cummings v. Hazlewood, No. 22-1087, 2023 WL 5281560, at *2 (1st Cir. May 19, 2023) (rejecting DHO finding that an attacker and victim "coordinated" to create "conflicting evidence" where the two individuals were immediately separated and no evidence of a motive to lie was in the record).

In the context of constructive possession of contraband, courts applying Hill have upheld disciplinary findings where there is evidence directly linking the contraband to the inmate.  For example, courts have found the standard satisfied where contraband was discovered in an inmate's personal locker, Chavis v. Hazlewood, No. 19-cv-488, 2020 WL 1290355 (D.N.H. Mar. 18, 2020), where the inmate was seen physically carrying the contraband, Rodriquez v. Williams, No. 19 CV 2485, 2020 US DIST Lexis 26817 (N.D. Ohio Feb. 18, 2020), where identifying information—such as a phone number registered to that inmate—appeared on the device itself, Toth v. Spaulding, No. 19-cv-11611, 2020 WL 4698534 (D. Mass. Aug. 13, 2020), and where a caller identifies the petitioner as having sent them communications, Cipriano v. Fed. Bureau of Prisons, No. 17-377, 2018 WL 400768 (D.R.I. Jan. 12, 2018).  In such circumstances, there exists evidence providing a direct nexus between the inmate and the prohibited item.

Where no direct evidentiary link to a specific inmate exists, courts have permitted findings of liability against a group of potentially responsible inmates, but only where the evidence does not distinguish between them or otherwise identify a particular individual as the culpable party. See Solomon v. Warden, 506 F. App'x 147, 149 (3d Cir. 2012) ("In the absence of direct evidence indicating an inmate's guilt of possession, the 'some evidence' standard may

be satisfied by application of the constructive possession doctrine in limited circumstances where a small number of inmates are potentially guilty of the offense charged."). Hill itself involved circumstances in which three inmates were observed fleeing from another inmate who had just been assaulted and left with a bloody mouth and swollen eye. Hill, 472 U.S. at 447-48. Because there was "no direct evidence identifying any one of the three inmates as the assailant," the Supreme Court held that the collective circumstantial evidence sufficed to hold all of them liable as a group. Id. at 457; see also Waltower v. Farley, No. 12cv2036, 2013 WL 4828661, at *4 (N.D. Ohio Sept. 09, 2013) (contraband found inside wall shared by three inmates); Denny v. Schultz, 708 F.3d 140, 145-47 (3d Cir. 2013) (sharp weapon found inside ceiling vent of shared cell); Rivera, 2021 WL 1894499 (drugs found hidden in table leg inside shared common area). In such situations, the application of a broad inference is allowed because the evidence does not point more strongly to any one individual.

  This case presents materially different circumstances. The DHO did not rely on any evidence directly linking the phone to Petitioner. The phone was not found among Petitioner's personal belongings, such as his locker or mattress. No staff member or inmate alleges observing Petitioner holding or using the device. Nor is there evidence of any identifying information, such as phone numbers, contacts, or other data, connecting the device to Petitioner. Instead, the DHO relied only on the incident report stating that the phone was found on the "floor under the cell bed area" of Petitioner's shared cell and photographic evidence presumably showing the same. [Dkt. 15 at 10]. But the DHO's application of a broad theory of collective responsibility is not available where, as here, there exists evidence directly linking the phone to another inmate. Petitioner represents that, had he been permitted to call his cellmate as a witness, the cellmate would have testified that the phone was his, that he took steps to conceal it

13

from Petitioner, and that Petitioner had no knowledge of its existence. [See Dkt. 1 ¶ 13; Dkt. 1-2 at 2]. Moreover, a charger matching the phone was discovered in the cellmate's locker, and the cellmate admitted that the charger belonged to him. [Dkt. 1-2 at 5]. Thus, unlike similar constructive possession cases, this was not a situation in which there was no basis for differentiation between multiple inmates. Rather, the cellmate's proffered testimony and the associated charger provides a basis to distinguish between the occupants and undermines the DHO's use of a collective responsibility theory to conclude that Petitioner constructively possessed the phone. On this record, the Court cannot conclude that there was the evidentiary support necessary to sustain the DHO's finding.

### B. Good Time Credits for Pretrial Detainees

In addition to the above procedural due process claims, Petitioner argues that the sanction of 41 days' loss of GTC is unlawful because under 18 U.S.C. § 3624(b), only sentenced inmates are eligible to accrue such credits. Respondent's Motion to Dismiss does not respond to this argument and thus waives any defense. Regardless, because BOP has broad authority to discipline pretrial detainees, including imposing sanctions such as the loss of GTC, Petitioner fails to state a plausible claim for relief as to this ground.

Congress has delegated broad authority to BOP to administer the federal prison system, including the power to issue regulations designed to maintain the safety, security, and order of federal facilities. 18 U.S.C. § 4042; see 28 C.F.R. § 0.96(p); Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998). "[A]ll persons committed to the care, custody, and control (direct or constructive) of the Bureau of Prisons" —including pretrial detainees—"are subject to these rules." 28 C.F.R. § 541.10(a); Hagan v. Tirado, 896 F. Supp. 990, 993 (C.D.Cal.1995); Reno v. Koray, 515 U.S. 50, 63 (1995); see also Bell v. Wolfish, 441 U.S. 520, 546-47 & n.28 (1979)

(recognizing lack of distinction between pretrial detainees and convicted inmates regarding regulations governing prison security). Disciplinary sanctions, including the loss of GTC, are among the measures available to BOP to address violations of its regulations and policies.

GTC is a statutory entitlement provided for by 18 U.S.C. § 3624(b)(1). That statute permits "a prisoner who is serving a term of imprisonment" to "receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court." 18 U.S.C. § 3624(b). Each year, BOP has the discretion to determine whether "the prisoner has displayed exemplary compliance with institutional disciplinary regulations," and thus whether they are eligible for GTC. Id. By its terms, the statute applies only to sentenced inmates; pretrial detainees are ineligible to earn GTC because they are not yet serving a term of imprisonment. This limitation makes intuitive sense, as a pretrial detainee may not ultimately receive a custodial sentence, in which case, there would be no term of imprisonment for GTC to offset. See 28 C.F.R. § 523.17(1) ("A pretrial detainee may not earn good time while in pretrial status."); Rahman v. Wingate, 740 F. Supp. 2d 430, 432 (S.D.N.Y. 2010) ("In the event that [a petitioner who is currently a pretrial detainee] resolves any pending criminal charges without a sentence of imprisonment, the good-time-credit issue would become moot.").

BOP regulations, however, permit disciplinary actions that "recommend[]" a loss of GTC for a pretrial detainee, which may be considered "in the event that the pretrial detainee is later sentenced on the crime for which he or she was in pretrial status." 28 C.F.R. § 523.17(1). The GTC is not "'held in abeyance' and then used to reduce the amount of credit earned by petitioner during the service of his prison sentence, but [is] instead used to reduce the amount of additional good time credit earned by petitioner during his pretrial detention." Resnick v. Adams, 37 F. Supp. 2d 1154, 1158 (C.D. Cal. 1999).

Here, the DHO's sanction of denying GTC was a lawful exercise of BOP's disciplinary authority over pretrial detainees. It is true that Petitioner was not yet serving a term of imprisonment and thus was not entitled to GTC under 18 U.S.C. § 3624(b)(1). Moreover, the sanction already included 30 days in disciplinary segregation—a significant penalty for possession of a cellphone, a determination that, as explained above, the Court finds was supported by questionable evidence and whose proportionality the Court also finds concerning. See Bell, 441 U.S. at 539 n.20 ("[L]oading a detainee with chains and shackles and throwing him in a dungeon may ensure his presence at trial and preserve the security of the institution. But it would be difficult to conceive of a situation where conditions so harsh, employed to achieve objectives that could be accomplished in so many alternative and less harsh methods, would not support a conclusion that the purpose for which they were imposed was to punish."). Nevertheless, pursuant to 28 C.F.R. § 523.17(1), the DHO was authorized to "recommend[]" a loss of GTC for the disciplinary violation that was then triggered upon Petitioner's sentence. Accordingly, Petitioner fails to state a claim upon which relief may be granted on this ground.[2]

### C. Administrative Exhaustion

In the alternative, Respondent urges the Court to dismiss the Petition for failure to exhaust administrative remedies. Petitioner, however, has filed a supplemental motion demonstrating that he has completed BOP's administrative appeals process [Dkt. 18]. Accordingly, the Court declines to dismiss on this ground.

---

[2] Petitioner's sole argument appears to be that the revocation of GTC for pretrial detainees is categorically unlawful. He does not argue, for instance, that BOP violated 28 C.F.R. § 523.17(1) by applying the loss of GTC to the amount of credit earned by Petitioner during the service of his prison sentence rather than the credit earned by Petitioner during his pretrial detention. The Court therefore does not address that issue.

16

Unlike petitions brought under § 2254, there is no statutory exhaustion requirement for habeas petitions brought under § 2241. See 28 U.S.C. § 2254(b)(1) (requiring exhaustion of state remedies for state prisoners seeking a federal writ of habeas corpus); see also Preiser, 411 U.S. at 491-92 (explaining that § 2254 statutorily requires exhaustion); Josselyn v. Dennehy, 475 F.3d 1, 2 (1st Cir. 2007) (same). Nonetheless, courts may, in their discretion, require exhaustion under common law principles. See Rodriguez-Rosa v. Spaulding, No. CV 19-11984, 2020 WL 2543239, at *7-9 (D. Mass. May 19, 2020). To exhaust administrative remedies for BOP disciplinary proceedings, a petitioner must present all claims through the BOP Administrative Remedy Program. Rogers v. United States, 180 F.3d 349, 357 (1st Cir. 1999). The BOP Program "sets out a multi-level appeals process for successful exhaustion." See Phillips v. Bowers, 784 F. Supp. 3d 471, 474 (D. Mass. 2025); 28 C.F.R. § 542, Subpart B; see also Rodriguez-Rosa, 2020 WL 2543239, at *7-9 (detailing BOP administrative appeals process). For challenges to a disciplinary sanction, the process is two steps: first, an appeal to the Regional Director and then, an appeal to the BOP Office of General Counsel. See 28 C.F.R. § 542.14(d)(2).

Here, Petitioner has exhausted the BOP Administrative Remedy Program. He filed a timely appeal with the Regional Director, which was denied on July 10, 2024. [Dkt. 1-2 at 11-13]. Petitioner then appealed to the BOP Office of General Counsel, which also denied relief on September 30, 2025. [Dkt. 18-1 at 2-3]. Petitioner has thus sufficiently demonstrated that he exhausted available administrative remedies. The Court therefore declines to dismiss on exhaustion grounds.

IV.     CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss [Dkt. 14] is **DENIED**. Petitioner's Petition for Writ of Habeas Corpus [Dkt. 1] is **GRANTED IN PART** as to Count 1 regarding failure to provide advanced written notice, and to Count 2 regarding failure to allow Petitioner to call witnesses.  The Petition is **DENIED IN PART** as to Count 3 regarding unlawful revocation of GTC for a pretrial detainee.  Pursuant to the Court's broad equitable authority under 28 U.S.C. § 2243, Respondent is **ORDERED** to expunge the disciplinary ruling and restore Petitioner's 41 days of GTC.

**SO ORDERED.**

Dated: February 26, 2026                                   /s/ Angel Kelley
                                                          Hon. Angel Kelley
                                                          United States District Judge